182 P.2d 950

WILLIS et al. v. WESTERN HOSPITAL ASSOCIATION et al.

No. 7345.

Supreme Court of Idaho.

July 7, 1947.

J. H. Felton, of Moscow, for appellants.

V. R. Clements, of Lewiston, and Cannon, McKevitt & Fraser, of Spokane, Wash., for respondents.

438

BUDGE, Chief Justice.

This is an action in which appellants seek to recover $50,000 damages for the wrongful death of one Charley Willis, caused by the alleged negligence of Drs. R. T. Hopkins and A. B. Pappenhagen and Esther Schmiel, a nurse. The alleged negligence charged to have caused the death of Charley Willis is found in paragraph 6 to 11, both inclusive, of the complaint, the substance of which, briefly stated, is as follows:

1. That following the admission of the deceased to the hospital at Orofino he was not given proper or sufficient medical and surgical attention; that the offers of his friends and relatives to stay by him and care for him in lieu of nurses were rejected; that in his dazed, weakened and shocked condition he was left largely to care for himself;

2. That following the amputation of his leg on October 25 [23] 1944, the broken bones of his thigh were not set;

3. That following the operation no further medical or surgical attention was given him, private nurses were not employed, etc.;

4. That on the day following the operation one of the doctors informed appellant, Loren Willis, that they would have to send the deceased to the State Hospital North, because he made too much noise; that Es-

ther Schmiel, one of respondents, under advice of defendant doctors, swore to an insanity complaint; that at that time the deceased was not surgically healed, was in need of further medical and surgical assistance, and that defendants knew, or should have known that moving him to the State Hospital North would hasten his death; that placing him, a sane man, in an insane asylum further contributed to the shocked and disturbed condition resulting from his injury; that the removal of the deceased to the State Hospital North was for the sole purpose of relieving defendants of their duty of caring for him;

5. That he was moved from the hospital bed, where he should have been kept, to the State Hospital North, a distance of two [1⅛] miles; that in said hospital there were no facilities for the care of a man in his condition.

A general demurrer was filed to the complaint, which was overruled, and respondents answered denying all the material allegations of the complaint, and set up certain affirmative matters. At the conclusion of appellants' testimony the trial court sustained a motion for nonsuit. This appeal is from the "Judgment of Non-Suit."

The motion for nonsuit is made upon the following grounds:

"One. The evidence fails to prove that the defendant Western Hospital Association failed to provide adequate hospital facilities for the care of sick and injured people.

"Two. The evidence fails to prove that the defendant Western Hospital Association failed to provide skilled and competent physicians and surgeons for the treatment and care of sick and injured persons. The evidence fails to prove that the defendant Western Hospital Association failed to provide a sufficient number of trained and skilled nurses to care for sick and injured persons.

"The evidence fails to prove that the defendant Western Hospital Association was guilty of any breach of the obligations of the contract pleaded in the complaint.

"The evidence fails to prove that any act of the defendant Western Hospital Association was the direct and proximate cause of the death of the deceased Charley Willis.

"The evidence fails to prove that any act of the defendant Dr. Hopkins, whether by way of omission or commission, was the direct and proximate cause of the death of the deceased Charley Willis.

"The evidence fails to prove that any act of the defendant Dr. Pappenhagen, whether by way of omission of commission, was the direct and proximate cause of the death of the deceased Charley Willis.

"The evidence fails to prove that any act of the defendant Esther Schmiel, either by way of omission or commission, was the direct and proximate cause of the death of the deceased Charley Willis.

"The evidence fails to prove that the removal of the said Charley Willis from the

Orofino Hospital to the State Hospital North contributed to, or was the direct and proximate cause of, the death of Charley Willis.

"The determination of whether or not any act of omission or commission on the part of the individual defendants, or either of them, was the cause of the death of the said Willis involves a scientific question which can only be determined through scientific knowledge and experience. There is utterly lacking in this case evidence of such a character from persons possessing such knowledge, experience, and skill and qualified to testify in the case involving the issue presented in this case.

"Wherefore, the defendants and each of them, separately and collectively, challenge the sufficiency of the evidence to sustain the material allegations of the complaint, and each defendant, separately and collectively, moves the Court for a judgment of nonsuit and a dismissal of the alleged cause of action as set forth, or attempted to be set forth, in the complaint of the plaintiffs."

It is the contention of appellants that the primary cause of the death of Charley Willis was due to the negligence of respondents, in that during the time the deceased was in the hospital at Orofino he did not receive proper surgical, medical and hospital treatment.

To establish the allegations of the complaint in regard to the treatment of deceased in the Orofino Hospital, appellants rely upon the testimony of four witnesses.

Clara Willis was the first witness called on behalf of appellants. She testified, among other things, as follows:

That she saw the deceased in the hospital October 24th, the day after he was injured; she recalled that nurses came into the room; that deceased had been vomiting; she asked that his gown be changed, which was done. Witness wanted to stay at the hospital that night, but was not permitted to do so. She saw him again the 25th; she had to get closer to hear what he said. Deceased made no complaint about the operation or the manner in which it was performed; he expressed no dissatisfaction with Dr. Hopkins or Dr. Pappenhagen; he expressed no dissatisfaction with what the nurses did or did not do for him; that on the morning of the 24th he was perfectly satisfied with the treatment he was receiving at the hospital. She did not see the deceased again until the 28th. Mrs. Willis was asked, on cross-examination, if there was any necessity for her to stay with the deceased the night of the 24th, to which she answered, "I don't know as there was. * * *"

A careful examination of the testimony of the witness fails to disclose that the treatment, care and attention given to the deceased while in the hospital was not satisfactory to deceased, or that the surgical operation was not successfully performed by the doctors, and fails to establish the lack of sufficient nurses to care for the deceased, or that the deceased was left largely

to care for himself. In fact, the evidence is to the contrary effect.

An examination of the testimony of Clyde Willis, son of the deceased, and Homer Richardson, discloses no evidence that shows, or tends to show, that the cause of the death of the deceased was due to the negligence or lack of care and skill in the performance of the operation by the doctors, or lack of attention and care on the part of the nurses. Loren Willis, brother of deceased, testified, in part, as follows:

That it was 40 or 50 miles from the place where his brother was injured to the hospital at Orofino; that his brother's leg had been severely mangled; that he was suffering excruciating pain; that it was necessary that he have immediate medical attention. He saw his brother following the operation on October 23d; that a nurse was with his brother continuously following his return from surgery until he came out of the anaesthetic. When he saw his brother his condition indicated that the operation had been successful and everything was to his ultimate satisfaction. He made no complaint of the treatment his brother had received. He saw his brother periodically that day, and he observed nothing in his condition requiring special attention. He saw his brother again on the 24th, and discussed the operation with him; that his brother appreciated the necessity for the amputation of his leg, and he made no complaint regarding the treatment he was receiving. He visited his brother again on the 25th, and deceased exhibited some slight restlessness, and vomited on several occasions. There was no indication that his brother was not receiving proper medical and nursing care. He did not see the deceased on the 26th or the 27th.

Appellants state in their brief, inter alia, that deceased "got along all right for the first day or two. His recovery from the operation seemed to be progressing, but, as is not extraordinary, the constant giving of drugs did not affect him to the extent of quieting him, and when he became noisy because thereof, or for some reason, it seemed to be the intent of these people, who had a contract to keep Charley Willis until he was surgically healed, to get him out of the hospital so they would not be required to further care for him." There is no evidence to support the latter part of the statement. That he was noisy and uncontrollable, and that drugs were administered to him in order to quiet him is supported by the record.

The burden of proof was upon appellants to establish, by a preponderance of the evidence, that respondent doctors were negligent, careless and unskillful in performing the operation, and that the nurses negligently failed to render proper nursing care to the deceased in order to establish the right to recover. There is no substantial evidence in the record to establish the allegations contained in paragraph 7 of the complaint, to the effect that deceased was not given proper or sufficient

medical and surgical attention by the doctors, or that he was not given proper and adequate care and attention by the nurses, or that he was left largely to care for himself.

There is no evidence that the physicians failed to exercise requisite skill and care in the treatment of the deceased, or that the physicians did not possess that reasonable degree of learning, skill and experience which is ordinarily possessed by others of their profession, or that the care and attention given to deceased was not such as would have been given by other physicians in good standing in that neighborhood.

■ In Swanson v. Wasson, 45 Idaho 309, 262 P. 147, 148, this court said:

"Where the evidence is as consistent with the absence, as with the existence of negligence, the case should not be left with the jury. As was said in Ewing v. Goode, C.C., 78 F. 442, 443:

" 'If there is no injury caused by lack of skill or care, then there is no breach of the physician's obligation, and there can be no recovery. Craig v. Chambers, 17 Ohio St. 253, 260. Mere lack of skill, or negligence, not causing injury, gives no right of action, and no right to recover even nominal damages. * * *

" 'Before the plaintiff can recover, she must show by affirmative evidence, first, that defendant was unskillful or negligent; and, second, that his want of skill or care caused injury to the plaintiff. If either element is lacking in her proof, she has presented no case for the consideration of the jury.' "

■■ Negligence on the part of a physician consists in his doing something which he should not have done, or in omitting to do something which he should have done. There is no evidence in the record here which shows, or tends to show, that respondents were negligent in doing something which they should not have done in treating deceased while he was in the Orofino Hospital. The burden of proof was on appellants, and it is not sufficient to merely show a possibility or raise a suspicion that respondents may have been negligent. Evans v. Bannock County, 59 Idaho 442, 83 P.2d 427.

This brings us to another phase of the case, namely, the mental condition of deceased while in the hospital at Orofino, and his removal to State Hospital North which, it is strenuously insisted, contributed to or hastened the death of deceased.

Summarizing the evidence offered in support of appellants' contention, it might be well to briefly call attention to the following facts:

Deceased was admitted to the hospital on the 23d of October; he had met with a severe injury in the sawmill where he was working on the morning of that day; his leg was badly mangled almost to the knee, necessitating an operation removing the leg a short distance above the knee, and he sustained other serious injuries. The

afternoon of the 25th Dr. Hopkins informed Clyde Willis that his father was insane; on the night of the 27th or the morning of the 28th the doctor informed Loren Willis that his brother was insane, and asked him to come to Orofino. Upon arriving there, it was suggested to the brother that he sign an insanity complaint, which he refused to do. Thereafter Esther Schmiel, a nurse, signed a complaint charging the deceased with insanity. Sometime later the probate judge proceeded to hear said insanity charge, convening his court at the hospital, presumably due to the condition of the deceased. Mr. Swayne, a lawyer, appointed by the court, appeared on behalf of the deceased, and Mr. Kimble, prosecuting attorney for Clearwater county, appeared in his official capacity. Witnesses were sworn and examined, and at the conclusion of the hearing the probate judge, finding the deceased insane, issued his order of commitment, committing him to the State Hospital North.

Appellants do not assign as error that the order of commitment was issued without authority and was void, or that the proceedings in the probate court contributed to, or hastened the death of the deceased, therefore, we must assume that deceased was duly committed to the State Hospital North.

The probate judge, called as a witness on behalf of appellants, testified, on cross examination, in part, as follows:

"Q. And following the testimony that was given there, you, in your judicial function as probate judge, concluded that there was evidence to support that complaint, did you not? A. Yes, I did.

"Q. During the time that hearing was in progress, was it not the fact that, in order to keep Charley Willis in bed, two persons had to be on each side of the bed holding him down? A. Yes."

It might be here observed that the contract between the Lumber Company and the Western Hospital Association, pled and relied on by appellants, provides: " * * * nothing herein shall be held to require the Association to provide * * * any service or care * * * for cases of insanity or incurable conditions. * * * " If deceased was insane, as appellants' evidence tends to establish, no recovery could be had under the contract. The record is replete with evidence, to which no objection was made, establishing the fact that from the 26th to the 28th of October deceased was restrained to prevent him from getting out of bed, tearing the bandages from his injured limb, and inflicting indignities upon the nurses.

We come now to the sole and pertinent question for determination: Did deceased die as the result of having been moved from the Orofino Hospital to the State Hospital North, or was his death hastened by reason of such act of removal?

■ To establish this fact appellants called Dr. Shinnick, as an expert, out of turn, prior to the introduction of any testimony as to the manner or means used in transferring deceased from one hospital to the other. Dr. Shinnick was asked a hypothetical question, to which an objection was interposed and sustained, and the ruling of the court is assigned as error by appellants' assignment II. The material part of the hypothetical question asked Dr. Shinnick is as follows: "Q. If a man was seriously injured in a sawmill accident on October 23, 1944, taken to the Orofino Hospital on the same day and his right leg amputated about an inch-and-a-half above the knee, was it good surgical practice to move that man from the hospital to the insane asylum on October 28th, 1944?"

Appellant's counsel sought to enlarge upon the question to meet the objection that the question asked did not contain all the material facts developed in the case. Court and counsel suggested other facts that should be included in the hypothetical question, the court finally holding that it did not include all the facts developed up to the time it was propounded. The hypothetical question was submitted to Dr. Shinnick before all the facts, or sufficient facts, had been developed to enable the witness to intelligently answer the question. 32 C.J.S., Evidence, § 551b, p. 350; 22 C.J. p. 708, sec. 796, n. 33; 32 C.J.S., Evidence, § 552, p. 361; 22 C.J. p. 716, sec. 804. We have examined the additions to the question proposed, and observed the suggestions made by the court to appellants' counsel to the effect that the hypothetical question was insufficient in substance, *and was premature,* the court remarking that counsel had not "shown all that occurred between the time he had his leg amputated and the time he was removed, and that is one of the essential things."

No facts were disclosed in the hypothetical question as to the manner in which deceased was removed from one hospital to the other; no facts with reference to the hearing touching his sanity or insanity; what transpired at said hearing; what the condition of deceased's mind was at the time of his removal; what was necessary to be done in order to restrain him from tearing the bandages off the stump; his conduct toward the nurses who were waiting on him, and the necessity for placing him in restraint. In order to answer the hypothetical question the witness must know all the material facts and circumstances that happened from the time of injury to death. Otherwise such expert testimony would not be of help to the court or jury. 2 Jones on Evidence, p. 694, sec. 371.

■ Dr. Shinnick had never seen deceased; knew nothing about what happened in the hospital; knew nothing of deceased's mental condition, his acts or conduct; how or in what manner he was removed from the Orofino Hospital to the State Hospital North; whether or not the standard of

medical practice in the community had been shown and followed or disregarded; the physical condition of deceased prior to the operation; the nature and extent of the operation, or the result; the distance and time necessary for removal of the patient; his physical condition when he arrived at State Hospital North; the effect of the removal, if any, upon the patient's then condition. For these, and other reasons the court concluded that the question asked was premature, which ruling should be sustained for the reason there were not sufficient facts proved to present the case fairly.

In Jones Commentaries on Evidence, 2d Ed., Vol. 3, p. 2430, sec. 1328, the rule is stated:

"The court should reject questions which unfairly select part of the facts proved, *or which omit material parts.* (Emphasis ours.)

"Generally speaking the trial court is the arbiter of the propriety of the question; and the real test of the propriety of any given hypothetical question is its fairness." and at pp. 2447, 2448, sec. 1338: "Generally speaking, a hypothetical question should state all the facts relevant to the formation of an opinion, and then, assuming the facts stated to be true, ask the witness whether he is able to form an opinion therefrom, and, if so, to state such opinion * * *. It has been repeatedly said that the matter of form is largely discretionary with the trial court."

In Cochran v. Gritman, 34 Idaho 654, 203 P. 289, dealing with the form and sufficiency of a hypothetical question propounded to a medical expert, it was held, in effect, that the question must be so framed as to fairly reflect the facts admitted or proved.

Fairness being the ultimate test of a hypothetical question, we are unable to conclude that the question formulated by appellants' counsel was fair. It did not present all the facts necessary to enable the doctor called as an expert to form or give an intelligent opinion. Sufficient evidence had not been developed, as heretofore pointed out, prior to the time the doctor was called to enable him to say that under no circumstances would it be good practice to move a man who had had his leg amputated, within five days after the amputation.

In Fritz v. Horsfall, 24 Wash.2d 14, 163 P.2d 148, 150, the rule is stated and amply supported, as follows: "The testimony of other physicians that they would have followed a different course of treatment than that followed by defendant, or a disagreement of doctors of equal skill and learning as to what the treatment should have been, does not establish negligence. In such cases the court must hold that there is nothing upon which the jury may pass, the reason being that the jury may not be allowed to accept one theory to the exclusion of the other."

It will be observed the court did not deny appellants the right to introduce expert testimony, limiting his ruling to the insufficiency of the hypothetical question, for the reason that all the material facts were not fairly presented to the expert witness and that the hypothetical question asked of the expert was premature.

The principle of law is well established that the form of hypothetical questions and the facts to be embraced therein are matters resting largely in the sound discretion of the trial court; but the right and duty of properly framing a hypothetical question rests primarily on the counsel by whom the question is asked, and he should not be permitted to frame an improper question and then cast the burden of supplying its deficiencies on the opposing counsel. 32 C.J.S., Evidence, § 551b, p. 350; 22 C.J. p. 708, sec. 796, n. 33. Furthermore, as the order of evidence is an administrative function, the judge may permit an examining counsel at any stage to include in a hypothetical question facts of which he proposes to furnish evidence, the answer being received subject to be stricken out in case the necessary evidence is not furnished. However, it is ordinarily the rule that the facts on which a hypothetical question is based must be proved before the question is asked, and accordingly it is equally within the judge's discretion to refuse to allow the question to be put until the foundation in the evidence is actually laid. 32 C.J.S., Evidence, § 552, p. 361; 22 C.J. p. 716, sec. 804.

It is urged the court erred in granting respondents' motion for nonsuit at the conclusion of appellants' evidence.

The motion presented a question of law. We are not unmindful of the law stated in this jurisdiction, and the authorities cited in support of, and against, a motion for nonsuit. However, we are by no means persuaded that the cases cited by appellants are applicable under the facts of the case at bar. We have therefore concluded that appellants did not make out a prima facie case. The specific facts wherein the evidence is insufficient to support a judgment are particularly pointed out in respondents' motion. There is absolutely no competent, substantial evidence to support appellants' allegation that the death of the deceased was due to the wrongful and negligent acts of the respondents while he was in the hospital at Orofino, or that his death was accelerated or in any manner contributed to by the acts or treatment he received while in said hospital. There is a total lack of competent, substantial evidence which proves, or tends to prove, that the removal of the deceased from the Orofino Hospital to State Hospital North, or that the means and manner used in the transfer, or treatment received while in that hospital, contributed to or accelerated the death of Charley Willis. McAlinden v. St. Maries Hospital Ass'n, 28 Idaho

657, 156 P. 115, Ann.Cas.1918A, 380; Swanson v. Wasson, supra.

The rule is well established that a physician and surgeon undertaking the treatment of a patient is not required to exercise the highest degree of skill possible (McAlinden v. St. Maries Hospital Ass'n, supra), which the evidence shows was accorded to the deceased in the instant case. The mere showing of a possibility or a suspicion that the negligence or unskillful treatment received at the hands of a physician or surgeon hastened or accelerated the death of the deceased, is not sufficient. Evans v. Bannock County, supra. As heretofore stated, the objection to the hypothetical question was properly sustained, *as being premature.*

Appellants assign as error the action of the court in denying their challenge interposed on voir dire to jurors McDougal and Chilton. Since the case was not submitted to the jury, the error, if any, was harmless.

It follows from what has been said that the judgment of the trial court granting respondents' motion for nonsuit must be sustained, and it is so ordered. Costs awarded to respondents.

GIVENS, HOLDEN and MILLER, JJ., and SUTTON, D. J., concur.