393 P.2d 718

Calvin L. HALE, Plaintiff-Appellant,

v.

Maurice K. HENINGER, C. D. Packer, M. P. Packer, and Bingham County, a Municipal corporation, Defendants-Respondents.

No. 9295.

Supreme Court of Idaho.

July 10, 1964.

Gee, Hargraves & Armstrong, Pocatello, for appellant.

Merrill & Merrill, Pocatello, Holden, Holden & Kidwell, Sharp & Anderson, Idaho Falls, for respondents.

**SMITH, Justice.**

Appellant (plaintiff) brought this action seeking to recover damages by reason of personal injuries by him suffered allegedly growing out of negligent operative procedures and treatment accorded him by respondents (defendants). The action is grounded upon alleged malpractice and neg-ligence of respondent, Dr. Maurice K. Heninger, in the performance of a myelogram, and of respondents, Drs. C. D. and M. P. Packer, in the performance of a laminectomy and fusion operation, and upon the alleged negligent pre-operative and post-operative treatment and care accorded appellant by respondent physicians, and by Bingham County as owner and operator of Bingham Memorial Hospital.

Respondents by their answers admitted the services rendered but denied any negligence in the premises. Respondent physicians affirmatively alleged that in the performance of the services they observed reasonable care and diligence, and exercised the degree of skill and learning possessed and exercised by members of the medical profession in similar localities, and that each acted in accordance with his best judgment. Respondent County alleged that as to its medical facilities offered appellant, it possessed and exercised the degree of care exercised by similar institutions in like localities. All of the respondents then alleged that there was no causal connection or proximate cause between the acts and services which they performed on behalf of appellant and his alleged injury or paralysis.

At the conclusion of appellant's case in chief before a jury, the trial court granted respondents' motions for directed verdict on the ground "that there is not in this case legal evidence which supports the action

or which will support any verdict for the Plaintiff [appellant] and against the Defendants [respondents]."

Appellant's myriad assignments on appeal, some without citation of authority or argument (see Supreme Court Rule 41), may be reduced to three principal issues: (1) whether the trial court ruled correctly on the evidence; (2) whether the doctrine of res ipsa loquitur was applicable under the facts of the case; and (3) whether the trial court properly granted a directed verdict for respondents. It is first necessary to review the facts.

During the spring of 1955, appellant, suffering from severe pain in his lower back, consulted respondent M. P. Packer, a general medical practitioner in Blackfoot, Idaho. Dr. Packer treated appellant during the entire summer and fall of 1955, during which time appellant experienced considerable pain in his back and inability, at times, to walk in an upright position. When conservative treatment failed to alleviate the condition, Dr. Packer suggested that appellant submit to a myelogram in order to determine if intervertebral disc surgery was necessary. Appellant consented thereto and the myelogram was performed December 14, 1955, by respondent Maurice K. Heninger, a radiologist, with the aid of a Mr. Staley, a laboratory technician employed by respondent, Bingham County, at Bingham Memorial Hospital.

The myelogram findings, supported by x-ray photographs, showed a defect in the exact area where the physicians believed that a herniated disc existed, considered in the light of appellant's medical history. With appellant's verbal consent, Dr. C. D. Packer, a general surgeon, assisted by Dr. M. P. Packer, performed a laminectomy and fusion upon appellant on December 15, 1955. Following the operation and during the afternoon of December 15th, appellant discovered that he could not move any part of his body below the breast line. Several hours after being summoned by a nurse at the hospital, Dr. C. D. Packer examined appellant and could not obtain any response to pinpricks on any part of his body below the breast line.

Two days later, on December 17th, Dr. Robert Yorke Herren, a neurosurgeon connected with Idaho State Hospital South, examined appellant. Dr. Herren determined by a cisternal puncture that appellant's spinal fluid was clear and colorless, which indicated lack of inflammation, infection or disease.

Appellant was discharged from Bingham Memorial Hospital February 3, 1956. Thereafter several physicians in the Salt Lake City, Utah area, examined appellant. Additionally appellant received physiotherapy. Those physicians concertedly concluded, as did respondent doctors, that appellant suffered a pathological condition

known as transverse myelitis, about which little is known to medical science.

Appellant did not call any examining physician from the Salt Lake City area as a witness at the trial. The only physicians who testified at the trial, in addition to respondents who were cross-examined under I.R.C.P. 43(b), were Dr. Lynn H. Anderson, a specialist in internal medicine, and Dr. James S. Sullivan, an anesthesiologist, of Pocatello, Idaho. Dr. Anderson answered questions concerning certain accepted medical practices in the Blackfoot area in December, 1955. He stated that a record of the patient's medical history, past and present, and facts disclosed by a thorough physical examination were necessary parts of the patient's hospital record, to be obtained prior to undergoing major surgery, and that it was proper procedure to inform a patient of all attendant risks, not confined to surgery alone but including administration of medicine, before obtaining his consent in writing under the accepted practice.

Dr. Sullivan, who had not obtained his medical degree in 1955, and who was licensed to practice medicine in the state of Idaho in 1961, was the only medical expert, other than respondents, called by appellant to testify concerning the causes of the disease of transverse myelitis. His answers were couched in terms of conceivability and possibility. On cross-examination he admitted that there were causes of such disease in addition to those contained in the questions asked by appellant on direct examination. He admitted that he had never performed a myelogram during the course of his practice; also that he was unacquainted with the accepted procedure for performing myelograms in the Blackfoot area in 1955, or with the procedure used in performing a laminectomy and fusion.

Neither Dr. Anderson nor Dr. Sullivan testified concerning proper procedure to be used in the operations performed on appellant by respondents. Indeed, the testimony of respondent physicians as adverse witnesses under I.R.C.P. 43(b) constituted the only evidence adduced relating to the procedures used in performing those operations; and that evidence is undisputed.

On direct examination at the trial of his cause in October, 1962, appellant testified that he was unable to walk and was confined to a wheelchair; that he experienced frequent pain and muscle spasms from the level of his armpits downward and was unable to control the waste functions of his body. Appellant also testified that "If the doctors [respondents] had explained * * * anything in the nature of risks or hazards," he would not have undergone either the myelogram or the laminectomy and fusion.

Appellant, by his assignments which assert error of the trial court in directing a verdict in favor of respondents, contends among other things, (1) that there was a

prima facie showing that respondents failed to obtain an informed consent from appellant; (2) that respondents misled appellant and induced him to submit to "needless" surgery under the guise that it would make him "as good as new"; (3) that respondent physicians and the agents of respondent County used unsterile materials and techniques during the operation on appellant; (4) that there was a misrepresentation of the myelogram findings by respondents, Drs. C. D. and M. P. Packer; (5) that all the respondents were negligent in that, in violation of the established medical practice in the area, they did not afford appellant a sufficient physical examination prior to surgery; and (6) that respondents Drs. Packer were negligent in performing the operation on December 15, 1955, after observing appellant's unusual symptoms following the myelogram and in failing to obtain advice from specialists in order to "reverse" appellant's condition.

The evidence indicates the questions raised by these assignments of error are controlled by Willis v. Western Hospital Association, 67 Idaho 435, 182 P.2d 950 (1947) and Walker v. Distler, 78 Idaho 38, 296 P.2d 452 (1956). This is so simply because appellant failed to support his allegations of negligence on the part of respondents by a preponderance of the evidence or, for that matter, by any substantial competent evidence. In Willis v. Western Hospital Association, supra, the plaintiff alleged that the failure of the physicians and a nurse to provide proper medical, surgical and hospital treatment and care, resulted in the wrongful death of a patient. The Court, in affirming a judgment of non-suit, discussed at length the plaintiff's burden of proof in malpractice actions and why the trial court properly dismissed the action:

"The burden of proof was upon appellant to establish, by a preponderance of the evidence, that respondent doctors were negligent, careless and unskillful in performing the operation, and that the nurses negligently failed to render proper nursing care to the deceased in order to establish the right to recover. There is no substantial evidence in the record to establish the allegations * * * to the effect that deceased was not given proper or sufficient medical and surgical attention by the doctors, or that he was not given proper and adequate care and attention by the nurses, * * *.

"There is no evidence that the physicians failed to exercise requisite skill and care in the treatment of the deceased, or that the physicians did not possess that reasonable degree of learning, skill and experience which is ordinarily possessed by others of their profession, or that the care and attention

given to deceased was not such as would have been given by other physicians in good standing in that neighborhood.

"In Swanson v. Wasson, 45 Idaho 309, 262 P. 147, 148, this court said:

"'Where the evidence is as consistent with the absence, as with the existence of negligence, the case should not be left with the jury. As was said in Ewing v. Goode, C.C., 78 F. 442, 443:

\*      \*      \*      \*      \*      \*

"'"Before the plaintiff can recover, she must show by affirmative evidence, first, that defendant was unskillful or negligent; and, second, that his want of skill or care caused injury to the plaintiff. If either element is lacking in her proof, she has presented no case for the consideration of the jury."'

"Negligence on the part of a physician consists in his doing something which he should not have done, or in omitting to do something which he should have done. There is no evidence in the record here which shows, or tends to show, that respondents were negligent in doing something they should not have done in treating deceased while he was in the Orofino Hospital. The burden of proof was on appellants, and it is not sufficient to mere-

ly show a possibility or raise a suspicion that respondents may have been negligent. Evans v. Bannock County, 59 Idaho 442, 83 P.2d 427." 67 Idaho at 441–442, 182 P.2d at 954.

Those statements from the Willis case were generally approved in Walker v. Distler, supra, and reflect the great weight of authority. See Annot., 57 A.L.R.2d 379 (1958); Annot., 13 A.L.R.2d 11 (1950).

As heretofore pointed out the burden of proof was on appellant, and it was not sufficient, by Dr. Sullivan's testimony, to show merely a possibility or raise a suspicion that respondents may have been negligent. Willis v. Western Hospital Association, supra; Evans v. Bannock County, 59 Idaho 442, 83 P.2d 427 (1938); Reinhold v. Spencer, 53 Idaho 688, 26 P.2d 796 (1933); Swanson v. Wasson, 45 Idaho 309, 262 P. 147 (1927). Dr. Anderson's testimony, dealing with accepted medical practice in the Blackfoot area in 1955, was to the effect that a patient's medical history and a thorough physical examination were necessary parts of his hospital record prior to undergoing major surgery, and that a patient should be warned of all risks attendant to the surgery and his consent in writing obtained. In answering questions put forth by respondents' counsel on cross-examination, Dr. Anderson admitted that appellant's exhibit A, admitted in evidence, was appellant's hospital record from Bing-

ham Memorial Hospital, that it contained a record of his personal medical history, past and present, and of his physical examination sheet; also that it listed appellant's chief complaints and working diagnoses, and that a part of such record was entitled "NURSES' BEDSIDE RECORD" which contained hourly notations relating to appellant's condition. Dr. Anderson also agreed with counsel's statement that, upon admission to the hospital on December 14, 1955, appellant's temperature, pulse, respiration and blood pressure were taken and recorded; he stated that appellant's wife also signed the standard authorization form in use at Bingham Memorial Hospital during 1955.

■ On the basis of the testimony above discussed, we are constrained to the view that reasonable and fair-minded men could not have differed as to the inferences and conclusions to be drawn therefrom, Splinter v. City of Nampa, 74 Idaho 1, 256 P.2d 215 (1953); Byington v. Horton, 61 Idaho 389, 102 P.2d 652 (1940) and that the trial court was correct in granting respondents' motions for a directed verdict. The evidence presented by appellant was insufficient, as a matter of law, "to establish his entitlement to recovery under any view which could be properly taken of the evidence." Shaffer v. Adams, 85 Idaho 258, 263–264, 378 P.2d 816, 818 (1963); Smith v. Big Lost River Irrigation District, 83 Idaho

374, 364 P.2d 146 (1961); I.R.C.P. 41(b); Sturgis v. Garrett, 85 Idaho 364, 379 P.2d 658 (1963); Nissula v. Southern Idaho Timber Protective Ass'n, 73 Idaho 37, 245 P.2d 400 (1952).

■ Appellant next contends that sufficient evidence was introduced to warrant submission of the cause to the jury upon the doctrine of res ipsa loquitur. We conclude that the trial court appropriately withheld consideration of this doctrine from the trier of the facts.

■ Shaffer v. Adams, supra, sets forth the essential elements of the doctrine of res ipsa loquitur. A plaintiff, seeking to invoke the doctrine must show: (1) that the agency or instrumentality causing the injury is under the control and management of the defendant; and (2) that the circumstances were such that common knowledge and experience would justify the inference that the accident would not have happened in the absence of negligence. "The application of the doctrine of res ipsa loquitur does not shift the burden of proof to the defendant. It merely shifts to the defendant the obligation to produce evidence to explain or rebut the inference of negligence raised by the application of the doctrine." C. C. Anderson Stores Co. v. Boise Water Corporation, 84 Idaho 355, 360, 372 P.2d 752, 754 (1962).

In Walker v. Distler, supra, this Court announced the rule: "Generally speaking,

negligence in malpractice cases must be established by expert medical testimony. This is so because the causative factors are not ordinarily within the knowledge or experience of laymen composing the jury [citations]." The Court, in the Distler case, recognized that there are exceptions to this general rule which permit a plaintiff in a malpractice case to invoke the doctrine of res ipsa loquitur, particularly in cases where a surgeon has left a foreign object within the body of a patient; that such negligence "is said to be within the experience and knowledge of laymen"; the Court also recognized that such doctrine had been applied in cases where common knowledge alone may not be sufficient to enable a layman to say that the accident is of a kind which ordinarily does not occur in the absence of negligence, and then stated the rule: "In such cases the evidence produced is considered and, if it furnishes a *sufficient* basis of information from which a lay jury can reasonably conclude that the accident is of a kind which normally does not occur unless someone was negligent, the doctrine is applied. [Citations]." (Emphasis supplied). 78 Idaho at 47, 296 P.2d at 457–458.

The evidence adduced herein was insufficient to permit the trial court to submit the doctrine of res ipsa loquitur for consideration to the jury, inasmuch as the evidence demonstrates that appellant's affliction is of a kind not normally caused by negligence. Operations on the spinal column and the pathological condition or disease known as transverse myelitis were not shown to be medical subjects within the common knowledge of laymen. On the contrary, respondents, Drs. Heninger and C. D. Packer, called by appellant to testify concerning the disease of transverse myelitis, stated that its exact cause is unknown to medical science; that it is not associated in any way with negligent care by a physician, and that it bore no known consequential relationship to surgery such as was performed in the case at bar. The conclusion can only be drawn from that evidence, which is undisputed, that appellant's affliction was not caused by any negligence on the part of respondents, but by a pathological condition or disease of etiology unknown to medical science. Appellant has failed to prove negligence on the part of respondents, Shaffer v. Adams, supra; Walker v. Distler, supra, or, for that matter, any causal relationship between their acts and appellant's affliction. McKeever v. Phoenix Jewish Community Center, 92 Ariz. 121, 374 P.2d 875 (1962).

Silverson v. Weber, 57 Cal.2d 834, 372 P.2d 97 (1962), demonstrates additionally the correctness of the trial court's ruling in the case at bar, particularly as to the inapplicability of the doctrine of res ipsa loquitur in the so-called "rare result" areas. In that case the California Supreme Court disapproved earlier decisions which had

**424**

broadened the application of the doctrine of res ipsa loquitur in malpractice cases where unusual results occurred. The reasons for restricting application of the doctrine in "rare result" cases were cogently expressed by Chief Justice Gibson, for a unanimous court, in language as follows:

"The fact that a particular injury suffered by a patient as the result of an operation is something that rarely occurs does not in itself prove that the injury was probably caused by the negligence of those in charge of the operation. [Citations].

"To permit an inference of negligence under the doctrine of res ipsa loquitur solely because an uncommon complication develops would place too great a burden upon the medical profession and might result in an undesirable limitation on the use of operations or new procedures involving an inherent risk of injury even when due care is used. Where risks are inherent in an operation and an injury of a type which is rare does occur, the doctrine should not be applicable unless it can be said that, in the light of past experience, such an occurrence is more likely the result of negligence than some cause for which the defendant is not responsible." 372 P.2d at 99, 100.

The trial court was correct in not submitting appellant's case to the jury based on the doctrine of res ipsa loquitur. For later California decisions discussing the rule announced in the Silverson case see Gerhardt v. Fresno Medical Group, 217 A. C.A. 394, 31 Cal.Rptr. 633 (1963); Davis v. Memorial Hospital, 58 Cal.2d 815, 376 P.2d 561 (1962); see also Annot., 82 A. L.R.2d 1262 (1962); Annot., 162 A.L.R. 1265 (1946).

■■ Appellant contends that the trial court erred in refusing to admit in evidence a copy of a letter and medical report sent to respondent Dr. C. D. Packer, by a Dr. Peter A. Lindstrom of Salt Lake City. The evidence indicates that respondent did not request the report which dealt with appellant's condition and that Dr. Lindstrom was not present in the courtroom at any time during trial of the cause. Objection to its admission was on the grounds that it was not the best evidence, that it was hearsay, and not probative of the issues. Admission of exhibits in explanation of testimony rests largely with the trial court's discretion. State ex rel. McKinney v. Richardson, 76 Idaho 9, 277 P.2d 272 (1954). The exhibit was not the best evidence and was hearsay. The court's ruling was correct. Johnson v. Flatness, 70 Idaho 37, 211 P.2d 769 (1949); Wasson v. Wasson, 73 Idaho 359, 253 P.2d 236 (1953).

■ Appellant contends that the trial court should have admitted in evidence a carbon copy of a letter from respondent,

Dr. C. D. Packer, addressed to Dr. Manley B. Shaw, Boise, Idaho. The court initially admitted the exhibit in evidence but, upon hearing argument of respondents' counsel, withdrew it on the grounds that certain statements therein contained were hearsay and unsubstantiated, that certain opinions therein expressed were not admissible as expert opinions, and that it contained statements that were prejudicial to respondents. Appellant made no showing as to his inability to produce the original of the letter. Moreover, respondent, Packer, writer of the letter, was on the witness stand at the time the exhibit was offered in evidence, and was available for examination. The letter contained statements about possible settlements, appellant's financial difficulties and insurance dealings. The trial court was correct in withdrawing the proffered exhibit from the evidence. State v. Richardson, supra. Further, although the trial court indicated that appellant would be permitted to resubmit portions of the letter not deemed objectionable, counsel for appellant made no attempt to do so.

Appellant also complains of the trial court's refusal to admit in evidence certain statements by Dr. Robert Yorke Herren and Dr. Chester A. Powell of Salt Lake City. Appellant made no attempt to offer the statements in evidence. "Questions or matters not presented in the record will not be considered on appeal." Hansen v. Devaney, 82 Idaho 488, 494, 356 P.2d 57, 60 (1960); Lanning v. Sprague, 71 Idaho 138, 227 P.2d 347 (1951).

We have considered appellant's remaining assignments of error relating to the evidence and to statements made by the trial court during the course of the trial, but deem them to be without merit.

The judgment is affirmed. Costs to respondents.

KNUDSON, C. J., and McQUADE, McFADDEN and TAYLOR, JJ., concur.