409 P.2d 110

**Lester G. FLOWERDEW, Plaintiff-Appellant,**

**v.**

**Wendell S. WARNER, Defendant-Respondent.**

No. 9520.

Supreme Court of Idaho.

Dec. 23, 1965.

Reginald R. Reeves, Idaho Falls, for appellant.

Holden, Holden & Kidwell, Idaho Falls, ·for respondent.

McFADDEN, Justice.

Plaintiff, Lester G. Flowerdew, the appellant herein, fell while carrying a battery, and immediately suffered pains in his back. He was treated by a naturopath, and about two or three weeks later, on April 19, 1960,

consulted Dr. Wendell S. Warner, the defendant-respondent, an osteopathic physician. On the first visit, Dr. Warner examined appellant and took X-ray pictures of the pelvic and lumbar region of appellant's back. Dr. Warner stated his diagnosis of appellant's condition causing the pain as:

"The diagnosis is a thin fifth lumbar disc, injured fifth lumbar disc, degenerative fifth lumbar disc, fibrositis, lumbosacral and dorsal."

After completing the examination and diagnosis, Dr. Warner treated appellant by traction and osteopathic methods, by having appellant lie on a table designed for that purpose. Dr. Warner described the table and its operation as follows:

"It's a table for treatment which is divided in the middle, approximately. The lower half of the table moves back and forth in intermittent fashion at the rate of about 17 to 18 tractions per minute. At the foot of this table, at the foot of the lower half of the table, is an extension for ankle straps and between the extension and the end of the table is a spring which operates and activates the scale, which is located just below that. Now this is intermittent traction, as I said, and is not steady at any time. To finish up the table, the upper half is removable away from the lower half to increase or decrease pull. It contains and holds a harness. The abdominal harness, which fastens around the lower abdomen below the—above the level of the crest of the ilium, and the lower half —the lower edge of the strap crosses above the belt line. And this abdominal strap is fastened to the table by long straps attached to the head of the table —the head of the upper leaf of the table."

Dr. Warner continued his care of appellant twice a week, by giving him a total of eleven additional osteopathic treatments, consisting of manipulation, heat treatment, application of tension, and on the last two occasions with x-ray treatment.

Appellant instituted this action seeking damages for alleged malpractice of the respondent. Appellant's amended complaint consisted of three counts,—the first count being based on an oral agreement that respondent would cure appellant, alleging specific failures of the respondent as constituting negligence; the second count, on an allegation that respondent was engaged in the practice of medicine although not licensed as a physician and surgeon, and that he failed to exercise the skill ordinarily exercised by competent physicians in the area; the third, that the doctrine of res ipsa loquitur was applicable.

Respondent's answer constituted a general denial of the allegations of the ap-

pellant's amended complaint, and set forth as an affirmative defense that he possessed and exercised the degree of care exercised by osteopathic physicians in like communities, and as a further defense, alleged that there was no causal connection or proximate cause between the respondent's acts and the appellant's alleged injuries.

On the issues thus framed, the cause was tried before a jury. At the close of the appellant's case in chief, the respondent, claiming appellant failed to prove his case as a matter of law, moved for a judgment of dismissal on all three counts. The trial court granted the motion as to the first and third counts, i. e., the first count pertaining to an alleged agreement to cure, and the third count pertaining to the doctrine of res ipsa loquitur.

At the termination of all testimony, respondent moved for a directed verdict as to the second count, which the trial court granted, and entered judgment for respondent on the directed verdict. This appeal is from the judgment.

Appellant claims the trial court erred in granting respondent's motion to dismiss made at the close of the appellant's case, as to the first and third counts; also, in granting respondent's motion for a directed verdict as to the second count; by other assignments appellant questions the trial court's rulings on certain objections presented by respondent as to testimony sought to be elicited from two doctors and from the appellant himself.

■ As to the first court, the evidence fails to sustain the contention that respondent orally agreed he would cure appellant. Moreover, in the absence of a specific agreement, an agreement of a practitioner with his patient is one for services and treatment, not for a particular result. Riley v. Layton, 329 F.2d 53 (10th Cir. 1964); Marsh v. Pemberton (1959), 10 Utah 2d 40, 347 P.2d 1108; 41 Am.Jur. 198, Physicians and Surgeons § 79. No state of facts is disclosed which can remotely be considered as establishing any agreement or warranty to cure as was presented in the following cases where such an agreement is discussed: Noel v. Proud (1961), 189 Kan. 6, 367 P.2d 61; Safian v. Aetna Life Ins. Co., 260 App.Div. 765, 24 N.Y.S.2d 92 (Sup.Ct.1940), aff'd 286 N.Y. 649, 36 N.E.2d 692 (1941). There being no evidence to support a contract to cure the trial court did not err in dismissing this count.

Furthermore the record does not disclose any testimony that the treatment given, diagnosis made, or use of traction was not in full accord with the standards of practice of an osteopathic physician in the community. Aside from Dr. Warner, no other osteopathic physician was called to testify as to the standards of practice to be maintained by an osteopathic physician.

During appellant's case in chief, three other physicians were called as witnesses. One was a physician and surgeon specializing in neurosurgery, who had requested a myelogram, which was performed in April, 1961, and who performed the operation upon appellant; another was a physician and surgeon who had examined and treated appellant for tenderness in the abdomen. The other physician was a specialist in radiology, to whom appellant was referred in August, 1960, by the neurosurgeon for an x-ray examination of appellant's back, and who performed the myelogram in April, 1961. None of these physicians claimed to be familiar with the standards of practice of an osteopathic 'physician.

The general rule is that a practitioner of one of the healing arts, while remaining within the scope of his field of practice, is entitled to have the standard of treatment he gave a patient tested by the rules and principles of the school of medicine to which he belongs, and not by those of some other school. Klimkiewicz v. Karnick (1962), 150 Colo. 267, 372 P.2d 736; Bolles v. Kinton (1928), 83 Colo. 147, 263 P. 26, 56 A.L.R. 814; Wilkins' Adm'r v. Brock (1908), 81 Vt. 332, 70 A. 572; 41 Am.Jur. 203, Physicians and Surgeons § 85; 70 C.J.S. Physicians and Surgeons § 44, p. 952; Annot.: 31 A.L.R. 830; 19 A.L.R.2d 1193.

The trial court did not err in dismissing the first count of appellant's action, inasmuch as the evidence failed to support the allegations of that count.

Nor did the trial court err in dismissing the third count based upon the doctrine of res ipsa loquitur. During the appellant's case in chief, under the provisions of I.R.C.P. 43(b), he called as a witness the respondent, who testified as to the treatment he afforded the appellant, and that in his opinion appellant was suffering from a degenerative fifth lumbar disc. This diagnosis was based on the result of examination, manipulation, and x-rays taken by respondent of appellant's lower spine.

Respondent further testified that he did not take a myelogram of the spine to determine any other difficulties. His treatment of the appellant, consisted of manipulation, heat treatments, use of tension, and on the last two treatments, the use of x-ray. The tension used varied from 25 pounds to a maximum of 160 pounds, applied by means of a table upon which appellant would lie, with his feet in straps, and a strap over his abdomen. The length of time that the maximum tension would be applied would be only a few seconds and then decreased.

Appellant asserts that the doctrine of res ipsa loquitur is applicable in this case, and that the trial court erred in dismissing

his third count, and erred in directing the verdict for respondent. Appellant contends that there was excessive traction used upon the appellant by the respondent, and that as a consequence the injuries he is now suffering resulted from the excessive traction. He points to the fact that the appellant was bound to respondent's stretching table, that he did not know what the respondent was doing, and that the instrumentality causing the injury was solely under respondent's control and hence the doctrine of res ipsa loquitur is applicable. With this contention we cannot agree.

This court in the case of Hale v. Heninger, 87 Idaho 414, 393 P.2d 718, discussed the applicability of the doctrine of res ipsa loquitur in malpractice cases. There this court pointed out that for the doctrine to be applicable it must be proven (1) that the agency or instrumentality causing the injury is under the control and management of the defendant, and (2) that the circumstances must be such that common knowledge and experience would justify the inference that the accident is of a kind which normally does not occur unless someone is negligent. Therein this court quoted from Walker v. Distler, 78 Idaho 38, 296 P.2d 452, as follows:

"Generally speaking, negligence in malpractice cases must be established by expert medical testimony. This is so because the causative factors are not ordinarily within the knowledge or experience of laymen composing the jury." 78 Idaho at 47, 296 P.2d at 457.

In the instant case the first question presented is what constituted the accident? Appellant after treatments by a naturopath, for back pain, was treated by respondent, and later he took massage treatments, visited a chiropractor, who sent him to a neurosurgeon; thereafter appellant consulted another physician in California, and upon returning again consulted with the neurosurgeon who performed an operation upon the cervical portion of the appellant's spine. Unlike the usual case wherein the doctrine of res ipsa loquitur is applicable, there was no dramatic change in physical condition and there is no direct proof of causation between appellant's condition and anything that the respondent did or failed to do. The nature of appellant's affliction, the complexity of the factors causing the condition, the lack of any dramatic change of condition resulting from anything the respondent did or failed to do, are all supportive of a conclusion that a layman could not say as a matter of common knowledge and observation that the consequences of the professional treatment were not such as ordinarily would have followed if due care had been exercised. Schofield v. Idaho Falls Latter Day Saints Hospital, 90 Idaho 186, 409 P.2d 107. There was no error in not submitting this cause to a jury on the theory of res ipsa loquitur.

■ The third count of appellant's complaint was based on the theory that appellant had left his professional field of practice of that of an osteopathic physician and in fact engaged in the practice of medicine although not licensed as a physician and surgeon. Again the record fails to sustain such contention. To become licensed by examination as an osteopathic physician in this state, under the provisions of I.C. § 54–1601, the applicant must pass an examination which shall include the subjects of anatomy, physiology, physiological chemistry, toxicology, osteopathic pathology, osteopathic diagnosis, hygiene, osteopathic obstetrics and gynecology, minor surgery, principal and practice of osteopathy, and such other subjects as the department of law enforcement may require. Nothing in this record discloses that the respondent in his diagnosis, treatment, prescription, and administration of certain drugs was doing anything that was not recognized as being in the area of practice of an osteopathic physician. The record affirmatively discloses that the use of x-ray in examination and diagnosis is recognized as being within the field of practice of an osteopathic physician. Further the record fails to show any causal connection between the appellant's injury and respondent's treatment. There must be evidence that the alleged negligence was the proximate cause of the alleged injuries. Hall v. Bannock County, 81 Idaho 256, 340 P.2d 855. In Willis v. Western Hospital Association, 67 Idaho 435, 182 P.2d 950, this court pointed out that in a malpractice case the burden of proof is on the plaintiff and that it is insufficient merely to show or raise a suspicion that the defendants may have been negligent. The trial court did not err in granting respondent's motion for a directed verdict on this third count, for there was insufficient evidence to justify its submission to the jury.

■ ■ Appellant also assigns as error the trial court's refusal to allow appellant to state his opinion as to the cause of his condition. In Call v. City of Burley, 57 Idaho 58, 74, 62 P.2d 101, 108, this court stated:

"More latitude is allowed in the examination of the party to an action who is describing injuries received and their effect than is allowed other witnesses. In so testifying, such a witness necessarily expresses his or her opinion and conclusions, as to both the extent and effect of the injury. While such a witness may not testify as an expert and give expert opinion, he may nevertheless, state his or her notion or feeling as to the character and extent of the injury inflicted and the personal results he or she has experienced therefrom. (citing cases.) The extent, to which such inquiry may be carried by a party to the action, is in a large measure within the discretion of the

trial court; and in the case at bar we do not think that discretion was abused."

In the instant case, appellant was permitted to testify in some detail as to the nature and extent of his sufferings and complaints, but not as to the cause of them. The trial court correctly ruled that appellant could not testify to the cause of his condition, because such would have been only an opinion by appellant, not qualified as an expert in the field. 32 C.J.S. Evidence § 546(11), p. 131; 2 Jones on Evidence, 4th Ed. § 360, p. 669, 673; 2 Wigmore on Evidence, 3rd Ed. § 568, p. 660.

■■■ Appellant assigns as error the refusal of the trial court to allow Doctor Barnard to testify as to whether the treatment administered by respondent caused appellant's condition. During the course of the trial, appellant called Dr. Barnard, a neurosurgeon. The doctor testified as to his diagnosis, and the results of a myelogram and subsequent operation upon appellant's cervical disc. He continued:

> "A. * * * The patient states he noted them [right lateral neck pain, right lateral arm pain and right forearm pain, complaint of numbness in hand and from the waist down] following the conservative treatment he had from Doctor Warner. The patient's complaint was one that his legs felt half asleep."

The witness was then asked "could the treatment which he [appellant] described to you have caused this condition?" to which question the respondent objected, which objection the trial court sustained. The trial court did not err in this ruling. For by this question, appellant was seeking the doctor's opinion. Normally the opinion of an expert witness is based upon a hypothetical question, with the facts upon which the opinion is based being set out in the question itself. Evans v. Cavanagh, 58 Idaho 324, 331, 73 P.2d 83; Hancock v. Halliday, 70 Idaho 446, 220 P.2d 384. Here the question, seeking the witness's opinion, was improperly presented, not being in hypothetical form.

■■■ Dr. Barnard was also asked, "Doctor Warner testified that stretching improves the circulation; that a large amount of traction accomplishes a relaxation of muscles and an improvement of the blood supply. Have you an opinion concerning this?" to which question respondent objected as being incompetent, irrelevant and immaterial, and not in proper form. Again the court sustained this objection. There was no error in this ruling. An answer to the question proposed would have neither tended to prove or disprove any issues before the court, and later on this witness upon being asked a hypothetical question concerning the effect of varying weights being applied, was allowed to give a com-

 

prehensive answer as to his opinion. (see pg. 264).

 Appellant also assigns as error the refusal of the trial court to permit Dr. Bingham, a physician and surgeon called by appellant to testify as to the effect on the appellant of 270 pounds of traction. He had examined appellant in 1958 for abdominal pain, and again in 1961, and testified as to finding tenderness in the lower abdomen and near an area of previous hernia repair. Dr. Bingham was then asked the following question:

"Q. Based upon your training and experience, Doctor, given a patient who had the symptom which was discovered and diagnosed by Mr. Flowerdew, related to the hernia condition, the soreness in the abdomen area, and with such a patient if he had a history of having had excessive traction ranging from to 25 or 160 or possibly 50 to 270 lbs., would you have an opinion as to whether that would have an affect on the findings which you made in 1961 as to the hernia condition?"

Respondent's counsel, then examining Doctor Bingham in aid of an objection, developed that the doctor had no knowledge of osteopathic practice, other than in the area where the school of osteopathic and medical practices overlap. Following this examination the court sustained respondent's objection to the question as being incompetent, irrelevant and immaterial and not proving or tending to prove any issues of the case. The trial court did not err in this regard. There was no foundation laid indicating any relation to the injury for which this suit was brought and the effect of the traction treatment of the herniated condition.

The judgment is affirmed.

Costs to respondent.

McQUADE, C. J., and TAYLOR, SMITH and KNUDSON, JJ., concur.