453 P.2d 816

Gene HALL and Joanne Hall, husband and wife, Plaintiffs-Appellants,

v.

Dr. G. A. BACON, Dr. E. V. Simison, Dr. Leon Myers and St. Anthony Hospital of Pocatello, Idaho, Defendants-Respondents.

No. 10176.

Supreme Court of Idaho.

May 6, 1969.

Kerr & Williams, Blackfoot, for plaintiffs-appellants.

Merrill & Merrill, Pocatello, for respondent Bacon.

Maguire & Kisling, Pocatello, for respondent Simison.

Furchner & Anderson, Blackfoot, for respondent Myers.

Holden, Holden & Kidwell, Idaho Falls, for respondent, St. Anthony Hospital of Pocatello.

SPEAR, Justice.

This action was instituted by Gene Hall and his wife (appellants) against three doctors as individuals and St. Anthony Hospital at Pocatello, Idaho. Hall charged each of the respondents with malpractice or negligence in their treatment of him for severe facial injuries. It is now on appeal from the granting of a summary judgment in favor of the defendants and dismissing the action by the trial court.

On September 13, 1965, appellant was seriously injured while operating heavy equipment on a highway construction project in Bannock County. Shortly after the accident appellant received emergency treatment at St. Anthony Hospital, Pocatello, from Dr. G. A. Bacon, one of the respondents herein. Mr. Hall's injuries consisted of severe facial lacerations which were bleeding profusely, a fractured nose, a fractured maxilla, a fracture of the zygomatic arch, a fracture of the lower orbit of the left eye, as well as injuries to the back, pelvis and one leg. Initial emergency treatment consisted of procedures to control hemorrhaging particularly in the area of the nose and nasal cavities. Dr. Bacon also sutured the lacerations and made a request for X-rays.

The next day Dr. E. V. Simison, another respondent herein, a specialist in eye, ear, nose and throat treatment, was called in on the case. The X-rays were read, indicating

nose fractures. According to Dr. Bacon's brief, no other fractures were indicated at that time. On September 16th Dr. Simison performed surgery on Mr. Hall to straighten the nose.

On September 18th Dr. Simison removed the nasal splints from the plaintiff's nose and noted on the hospital record that Hall could "be discharged with Dr. Bacon's approval." Dr. Bacon also authorized discharge, but when Hall attempted to get out of bed, he fainted. Hall was therefore recommitted to the hospital, and stayed there until the 20th of September. He was not advised of the fractures of the maxilla, the zygomatic arch or the lower orbit of the eye until he had been discharged from the hospital.

On Friday, September 24, 1965, Hall visited Dr. Bacon, complaining of loose teeth, abnormal bite, and difficulty in raising the upper lid of the left eye, as well as fuzziness of vision in the left eye. Dr. Bacon thereupon referred Hall to Drs. Sutton and Wray, oral surgeons in the City of Pocatello. Upon examination by Dr. Wray, it was discovered that there was a fracture of the maxilla. Dr. Wray admitted Hall to the hospital and wired his jaw to treat the mandible fracture. Hospital records on this latter date of admission, September 26, 1965, indicate that Hall was still suffering from a markedly swollen face.

About October 18, 1965, Hall was seen by Dr. Wolfe, a specialist in plastic or reconstructive surgery, located in Salt Lake City, Utah. Dr. Wolfe noted a deformity of the left eye and recommended surgical procedure in order to determine that the floor of the orbit of the eye was not fractured. From this operation it was determined that the floor of the orbit was normal and Dr. Wolfe opined that the cause of the problem with the eye was a deterioration of the fatty tissue which cushioned the eye and "there was nothing a medical doctor could do to prevent that." Subsequently Hall was operated on by Dr. Broadbent, Dr. Wolfe's partner, also a plastic surgeon. The purpose of this latter treatment was additional corrective surgery on Hall's nose.

In their depositions neither Dr. Wolfe nor Dr. Broadbent indicated any deficiency in the treatment Hall received in Pocatello. Both doctors were of the opinion that no additional injury was suffered by Mr. Hall because of the delay in further surgery. In fact they indicated that under some circumstances, such as excessive swelling of the facial area (as in this case), a delay in operative procedures is recommended.

Appellant alleges that Dr. Bacon, Dr. Simison and Dr. Myers, the radiologist at St. Anthony's, as well as the staff of the hospital itself, were negligent and failed to use proper care and skill in diagnosing, treating, and caring for his condition. Appellant alleges that the parties were negligent in failing to inform him or any member of his family of his true physical condition or to take readable X-rays or to interpret the X-rays properly. Hall feels that he was discharged from the hospital before he was ready to be discharged, and that it was not until he obtained the services of Dr. Wray that he began to receive proper care and treatment. Hall's damages are alleged to consist of the prolongation of his pain and suffering, and the need for additional surgery, supposedly as a result of the delay in proper diagnosis and treatment.

In ruling on the defendants' motion for summary judgment, the trial court noted that there was no evidence in the record, and none offered, that services rendered and the facilities provided by the respondents were not as they should have been. Furthermore, the court found that there was no expert testimony provided or offered to the court to enable it to determine if the treatment provided by the respondents was negligent. In fact, the court noted, there was positive evidence from the doctors in Salt Lake City that the treatment received in Pocatello was proper. The court concluded that there was no conflict in the evidence presented to it and no

evidence to substantiate any finding of negligence on the part of defendants. However, even if a showing of negligence had been made, the court found that there was no resultant damage since the injuries were treated within a proper period of time. The court therefore granted the motions for summary judgment.

The appellant alleges three errors: (1) That the trial court erred in "weighing" the evidence on the motion for summary judgment; (2) That the pleadings, depositions, and affidavits set forth conflicting facts and inferences upon which reasonable men might differ; (3) That the plaintiff has the burden of furnishing expert testimony to provide a standard by which the defendants' conduct can be judged.

In his points and authorities appellant variously restates the rule for summary judgment that the moving party has the burden of showing the absence of any genuine issue, and that the material on file should be viewed in the light most favorable to the non-moving party. Appellant apparently strives for a very narrow interpretation of this rule. However, the position that summary judgment should not be granted if "there is the slightest doubt as to the facts," has recently been rejected by this court in the case of Tri-State Nat. Bank v. Western Gateway Storage Co., 92 Idaho 543, 447 P.2d 409 (1968). In that case this court said such a narrow interpretation of Rule 56 (I.R.C.P.) was too restrictive and concluded that:

> "The purpose of the rule is to allow the court to pierce the pleadings in order to eliminate groundless denials and *paper issues* in cases which would end in directed verdicts or other rulings of law." (emphasis added.)

The real issue in this case, therefore, is whether the plaintiffs have offered any facts which, when interpreted in the light most favorable to them, would support a finding of negligence on the part of the respondents. We conclude, as did the trial court, that no such showing by the plaintiffs has been made.

All the doctors' depositions in this case—those of the respondents Bacon and Simison as well as those of appellants' potential witnesses, Wray, Wolfe and Broadbent—are to the effect that Mr. Hall received at least adequate treatment by the respondents. All that is offered to refute this expert testimony are the unsubstantiated opinions of the appellants that the doctors were heedless to Hall's complaints, indifferent in their treatment, and less than completely accurate in the taking and reading of Hall's X-rays. Thus the conflict, if any, lies between the interpretation made by five doctors and the interpretations of two laymen. The general rule in Idaho on this issue is:

> "* * * [N]egligence in malpractice cases must be established by expert medical testimony. This is so because the causative factors are not ordinarily within the knowledge or experience of laymen composing the jury." Walker v. Distler, 78 Idaho 38, 47, 296 P.2d 452 (1956); Flowerdew v. Warner, 90 Idaho 164, 170, 409 P.2d 110 (1965); Schofield v. Idaho Falls Latter Day Saints Hospital, 90 Idaho 186, 194, 409 P.2d 107 (1965).

In absence of even an *offer* to supply expert testimony in their favor, appellants cannot complain about a dismissal of their case.

Finally, a defendant's negligence, if any, must result in damage to the plaintiff; a plaintiff has the burden of proving not only that a defendant failed to use ordinary care, but also that the defendant's failure to use ordinary care was the proximate cause of damage to the plaintiff. Flowerdew v. Warner, 90 Idaho 164, 170–171, 409 P.2d 110 (1965); Hall v. Bannock County, 81 Idaho 256, 263, 340 P.2d 855 (1959). As previously set forth, Doctors Wolfe and Broadbent stated in their depositions that it is not unusual practice to allow fractures, of the type herein involved, to go untreated for some short period of time after the trauma has occurred. This is particularly so in a case where there is a great deal of swelling, such as occurred with the appellant. Furthermore, the doc-

4

tors' depositions are unanimous in expressing the opinion that the swelling and other uncontrollable factors were the primary cause of the "opaqueness" of the X-rays of which Hall complains.

It is apparent from all of the record that was offered to the court below that Hall's injuries were not aggravated during the short period of time before they were completely diagnosed and treated. Therefore, the respondents' negligence, even assuming negligence did exist, did not proximately cause Gene Hall's injuries, and any recovery by the appellants is precluded.

Judgment affirmed. Costs to respondents.

McFADDEN, C. J., and McQUADE, DONALDSON and SHEPARD, JJ., concur.