614 P.2d 962

**Lee LePELLEY and Eileen L. LePelley, husband and wife, Plaintiffs-Appellants,**

**v.**

**Mark GREFENSON, Defendant-Respondent.**

**No. 13102.**

Supreme Court of Idaho.

July 28, 1980.

John B. Kugler, Pocatello, for plaintiffs-appellants.

J. Robert Alexander of Benoit & Alexander, Twin Falls, for defendant-respondent.

McFADDEN, Justice.

Plaintiffs-appellants Lee LePelley and Eileen LePelley brought an action against defendant-respondent Dr. Mark Grefenson following unsuccessful inner ear surgery performed by Dr. Grefenson on Lee LePelley alleging three causes of action: (1) for breaches of warranty; (2) negligence in the performance of the surgery, and (3) failing to inform the appellants as to the risks of the surgery. Following the taking of depositions of the parties and the two doctors identified by appellants as their expert witnesses, respondent moved for a partial summary judgment which was treated as a motion for complete summary judgment. Following a hearing on the motion the trial court entered summary judgment for respondent. Appellants then moved for reconsideration of the motion which was denied. Appellants appeal the granting of the motion for summary judgment.

In July of 1973 Dr. Mark Grefenson performed a stapedectomy on appellant Lee LePelley, which is an operation involving the bones of the inner ear. Mr. LePelley was suffering from a disease known as otosclerosis causing severe hearing loss. Plaintiff asserts that Dr. Grefenson represented with respect to the operation that he had never had a failure and that the operation was simple with an extremely high success rate. However, following the surgery, Mr. LePelley suffered even further hearing loss, dizziness and nausea. Following this unsuccessful surgery and several return visits to Dr. Grefenson which did not result in Mr. LePelley feeling any better, Mr. LePelley sought assistance from Dr. Goltry in Boise, who subsequently operated on Mr. LePelley and found a small bone fragment in his ear which was dropped during the stapedectomy. In his affidavit, Dr. Goltry stated that the dropping of a bone fragment in the ear is a risk of the stapedectomy. LePelley claims that Dr. Grefenson never informed him that this was a possible risk of the operation and that there was a possibility that he would lose the hearing in the ear. Because of the failure of the first surgery, the greatly diminished hearing in his left ear, and the continuing dizziness experienced by the appellant, he was required to undergo a radical operation in which the nerves of the inner ear were severed. Later, after continuing to experience dizziness, Mr. LePelley consulted Dr. Gary Thomas in Idaho Falls. Dr. Thomas determined that still further surgery was necessary to complete the process attempted by Dr. Goltry to eliminate appellant's dizziness. This surgery was successful and the ear is no longer functional in any capacity.

On his behalf, Dr. Grefenson introduced affidavits of Dr. Goltry and Dr. Thomas, the experts selected by the appellant, each of whom stated that he performed the operation within the standard of care of the community of Twin Falls where the operation was performed. Dr. Grefenson also introduced medical records of the hospital where the operation was performed which included a consent to surgery signed by LePelley. Dr. Grefenson claimed that because LePelley signed the consent which stated that he understood the risks of the operation that he cannot now claim that he was not informed of the risks of the operation without showing that there was fraud in the inducement of the signature. There was no showing of fraud by LePelley.

At the time of entering its order granting summary judgment against the appellants, the district court had the pleadings and depositions of the plaintiff, LePelley, the depositions of Dr. Vernon Goltry, Dr. Gary Thomas and the defendant-respondent Grefenson. The court also had the affidavits of Dr. Goltry and Dr. Thomas and the records of Magic Valley Memorial Hospital where the surgery was performed by Dr. Grefenson. Although the affidavit of Dr. Goltry indicated that it was standard procedure to inform a patient of the possible risks of the operation and that it would be a breach of duty not to so inform, he was not able to testify as to whether LePelley was or was not informed. All affidavits and depositions indicated from a reading of Dr. Grefenson's records that he performed the operation within the standard of care of the community. Nothing was introduced by LePelley to negate this showing. The court in granting the motion for summary judgment utilized two Idaho statutes, § 6–1012 and 1013 and ruled that the appellants had not met their burden of showing by expert testimony any information to negate the showing by Dr. Grefenson that he had met the standard of care of the community.

The essence of this appeal is the appellants' assertion that the trial court erred in granting the respondent's motion for summary judgment. They base this contention first on the fact that the trial court granted the motion utilizing I.C. §§ 6–1012 and 1013 as the standard of proof that they must meet in order to sustain their action for medical malpractice against the respondent, Dr. Grefenson. They claim that the utilization of these two statutes was a violation of the constitutional prohibition against passing laws with retroactive operation. Idaho Const. Art. XI, § 12. They also claim that these two statutes are unconstitutional because they deny them equal protection of the laws. Finally, they argue that the court erred in granting the motion for summary judgment because there are unresolved genuine issues of fact. I.R.C.P. 56(c).

■ We will first consider appellants' argument that I.C. § 6–1012 and 1013 retroactively establish a different burden of proof that must be met to sustain their action for medical malpractice. These two provisions were added in 1976 (1976 Sess.Laws, Ch. 277, §§ 2, 3, pp. 951–52.) Section 4 of this act reads:

"This act shall apply retroactively as respects all claims heretofore accrued and also to acts, errors or omissions heretofore or hereafter occurring."

The appellants cite two sections of the act as violating the Art. XI, § 12 prohibition against passing any law for the benefit of any individual or association which is retroactive in operation: (1) that the standard of practice and the failure of the medical person to meet the standard must be established by *expert* testimony and (2) that the standard of care shall be that of the *local community*. However, an analysis of prior Idaho cases demonstrates that both were the standards before the enactment of the statutes. Therefore, there is no retroactive application to the case at hand because the legislature codified already existing case law.

The need for expert testimony in a medical malpractice case was well established prior to enactment of this legislation. In *Hall v. Bacon*, 93 Idaho 1, 3, 453 P.2d 816, 818 (1969), the court stated:

"The general rule in Idaho . . . is:

' . . . [N]egligence in malpractice cases must be established by expert medical testimony. This is so because the causative factors are not ordinarily within the knowledge or experience of laymen composing the jury.' *Walker v. Distler*, 78 Idaho 38, 47, 296 P.2d 452 (1956); *Flowerdew v. Warner*, 90 Idaho 164, 170, 409 P.2d 110 (1965); *Schofield v. Idaho Falls Latter Saints Hospital*, 90 Idaho 186, 194, 409 P.2d 107 (1965)."

■ The appellants counter by asserting that under the doctrine of *res ipsa loquitur* a layman could say as a matter of common knowledge that the consequences showed that the doctor failed to follow the standard of due care. It is true that the doctrine of *res ipsa loquitur* has been applied in medical malpractice actions under prior case law. *Riedinger v. Colburn*, 361 F.Supp. 1073, 1078 (D.C.Idaho 1973); *Schofield v. Idaho Falls Latter Day Saints Hosp.*, 90 Idaho 186, 409 P.2d 107 (1965); *Hale v. Heninger*, 87 Idaho 414, 393 P.2d 718 (1964); *Walker v. Distler*, 78 Idaho 38, 296 P.2d 452 (1956). Assuming, arguendo, that utilization of *res ipsa loquitur* is now precluded under I.C. § 6–1012 by the statutory language which states that in a claim for damages in a medical malpractice action, the "plaintiff must, as an essential part of his or her case in chief, affirmatively prove by *direct expert testimony* . . . .," it does not act to retroactively change the burden on the appellants in this case because the doctrine of *res ipsa loquitur* would not apply here even under the prior case law.

■ As stated in *Hale v. Heninger, supra*, 87 Idaho at 422, 393 P.2d at 722, the doctrine of *res ipsa loquitur* applies only in situations where two requirements are met:

"A plaintiff, seeking to invoke the doctrine must show: (1) that the agency or instrumentality causing the injury is under the control and management of the defendant; and (2) that the circumstances were such that common knowledge and experience would justify the inference that the accident would not have happened in the absence of negligence."

In *Schofield v. Idaho Falls Latter Day Saints Hosp., supra*, 90 Idaho at 194, 409 P.2d at 109, a medical malpractice case, the court reaffirmed the position taken in *Hale*, stating:

" . . . the doctrine must be limited to those cases where a layman is able to say as a matter of common knowledge and observation that the consequences of professional treatment were not such as ordinarily would have followed if due care had not been exercised. Where such facts are absent, expert medical evidence is required to prove negligence."

*Accord: Riedinger v. Colburn, supra*, 361 F.Supp. at 1079; *Conrad v. St. Clair*, 100 Idaho 401, 599 P.2d 292, 298–99 (1979); Annot., Malpractice—*Res Ipsa Loquitur* 82 A.L.R.2d 1262, § 2[b] (1962), and Later Case Service, p. 495.

■ This is not a case where a layman could say as a matter of common knowledge that the dropping of a bone fragment during the performance of a stapedectomy would not have happened if due care had been exercised. In fact Dr. Goltry testified that this was a risk of the operation and affidavits of Dr. Goltry and Dr. Thomas introduced by Dr. Grefenson stated that he had performed the operation within the standard of care. Therefore the doctrine of *res ipsa loquitur* could not be applied to this case under the rules outlined above for its application.

■ The appellant also asserts that the statute unconstitutionally operates retroactively in that it requires that proof be established that the medical practitioner failed to meet the standard "in the community in which he practices." "The community" is defined as the geographical area ordinarily served by the licensed general hospital at or nearest to which such care was or allegedly should have been provided. I.C. § 6–1012. This is not a retroactive change in standard. Under prior case law the local community has been the area wherein a practitioner's standard of care has been determined. In *Hale v. Heninger, supra*, 87 Idaho 420–1, 393 P.2d 721, the court quoted with approval the statement

by this court in *Willis v. Western Hospital Ass'n*, 67 Idaho 435, 182 P.2d 950 (1947), in discussing why the trial court properly dismissed the action:

> "There is no evidence that the physicians failed to exercise requisite skill and care in the treatment of the deceased, or that the physicians did not possess that reasonable degree of learning, skill and experience which is ordinarily possessed by others of their profession, or that the care and attention given to deceased was not such as would have been given by other physicians in good standing in *that neighborhood*." (Emphasis added.)

The court has consistently applied the "similar locality rule." In the 1931 case of *Davis v. Potter*, 51 Idaho 81, 87–8, 2 P.2d 318, 320 (1931), the court stated:

> "This court has followed the rule laid down in 30 Cyc. 1570 (see, also, 48 C.J. 1113 et.seq.) as to the degree of skill and care required of physicians and surgeons in caring for their patients. '. . . [A physician] is only required to possess and exercise that degree of skill and learning ordinarily possessed and exercised by the members of his profession in good standing, practicing in similar localities . . .. He "is bound to bestow such reasonable and ordinary care, skill, and diligence as physicians and surgeons in the *same neighborhood*, in the same general line of practice, ordinarily have and exercise in like cases." ' " (Emphasis added.)

*Accord: Swanson v. Wasson*, 45 Idaho 309, 262 P. 147 (1927).

The statutes in question, I.C. § 6–1012 and 1013 do not change the standard of proof required in medical malpractice cases as they apply to the case at hand. Therefore, we hold that provisions of the Idaho constitution prohibiting the passing of laws for the benefit of any individual with retroactive application is not offended.

The appellant also asserts that the statutes are unconstitutional because they violate the Equal Protection Clause of the Fourteenth Amendment and Art. I, § 2 of the Idaho Constitution. He claims that because a doctor in Potlatch, for example, would be held to a different standard than a doctor in Pocatello, that the people in these towns will get a different standard of care and that this is a denial of equal protection.

The legislation in the instant case is to be measured by the rational basis test described by the Supreme Court in *McGowan v. Maryland*, 366 U.S. 420, 425–6, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961):

> "The constitutional safeguard [of equal protection] is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."

There is no suspect class or fundamental right at stake such as to invoke the "strict scrutiny" test as defined by the Supreme Court in *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). *See United States v. Carolene Products Co.*, 304 U.S. 144, 152, n. 4, 58 S.Ct. 778, 783–84, 82 L.Ed. 1234, 1241–42 (1937). Nor does there exist a "quasi" fundamental right, "almost" suspect class, or an invidiously discriminatory class such as to invoke what has been called the "means scrutiny" test.

> "The 'means scrutiny test' enunciated in *Reed* [404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971)] has been followed by recent decisions of this Court in which statutes of a blatantly discriminatory nature have been held to be unconstitutional as a denial of equal protection. . . We deem it also clear that those opinions did not intend to replace the traditional restrained view [i. e. rational basis] standard of equal protection tests of legislation except in those special cases involving invidiously discriminatory classifications. It is enough to say at this juncture that with respect to certain statutes which create obviously discriminatory classifications this Court will examine the means by which those classifications are

utilized and implemented in light of the asserted legislative purpose. However, the burden of showing the absence of a reasonable relationship under the means-focus test remains with the one who assails the classifications." (Citations omitted.) *Jones v. State Board of Medicine*, 97 Idaho 859, 867, 555 P.2d 399, 407 (1976).

In the case at hand, there is no showing that the locality rule is discriminatory at all. There is nothing in the record to show standards of care exercised by a doctor differs among the communities. The standard of care exercised by the respondent was examined by and approved according to the affidavits of a doctor from Boise and one from Idaho Falls. The case is also distinguished from *Jones* in that *Jones* dealt with a statute where a claimant with damages of more than $150,000 is precluded from fully recovering, while here the appellants are not precluded by the challenged statutes from having their day in court nor from fully recovering. Therefore the legislation does not fall into the group that calls for this court to employ the middle ground of scrutiny.

The legislature in enacting this legislation stated its purpose in Section 1 (1976 Sess.Laws, Ch. 277, § 1, p. 951):

"SECTION 1. It is the declaration of the legislature that appropriate measures are required in the public interest to assure that a liability insurance market be available to physicians, hospitals and other health care providers in this state and that the same be available at reasonable cost, thus assuring the availability of such health care providers for the provision of care to persons in the state. It is, therefore, further declared to be in the public interest that the liability exposure of such health care providers be limited and made more definable by a requirement for direct proof of departure from a community standard of practice."

█ Utilizing the test as set forth in *McGowan*, we do not find that the classification rests on grounds wholly irrelevant to the achievement of the state's objective and therefore do not find that the statutes violate the Equal Protection Clause of either the United States Constitution or the Idaho Constitution.

█ We now turn to the question of whether the trial court was correct in granting the respondent's motion for summary judgment. Summary judgment can be granted only when there is no genuine issue of material fact. I.R.C.P. 56(c). The moving party has the burden of showing the absence of any genuine issue of material fact and must be viewed in the light most favorable to the non-moving party. *Salmon River Sportsman Camps v. Cessna Aircraft Co.*, 97 Idaho 348, 353, 544 P.2d 306, 311 (1975); *Crane v. Banner*, 93 Idaho 69, 72, 455 P.2d 313, 316 (1969). However, the position that summary judgment should not be granted if "there is the slightest doubt as to the facts" has been rejected by this court. *Hall v. Bacon*, 93 Idaho 1, 3, 453 P.2d 816, 818 (1969). *Tri-State Nat'l Bank v. Western Gateway Storage Co.*, 92 Idaho 543, 447 P.2d 409 (1968). In *Tri-State* the court said a narrow interpretation of I.R.C.P. 56 was too restrictive and concluded that:

"The purpose of the rule·is to allow the court to pierce the pleadings in order to eliminate groundless denials and paper issues in cases which would end in directed verdicts or other rulings of law. . .

.     .     .     .     .

[T]he rule itself, in permitting summary judgment where 'no *genuine* issue of any *material* fact' appears, plainly requires more to forestall summary judgment than the raising of the 'slightest doubt' as to the facts." 92 Idaho at 545 and 546, 447 P.2d at 411, 412.

As was the case in *Hall*, the real issue is whether the appellants have offered any facts, which, when interpreted in the light most favorable to them present an issue of genuine fact in relation to negligence on the part of the respondent in the performance of the operation as alleged in count II, the heart of the action here. We agree

with the trial court that as to the performance of the operation and the propriety in doing it, there are no facts presented as to the respondent's negligence such as to withstand the motion for summary judgment.

■ The appellants indicated that Dr. Goltry and Dr. Thomas were the experts that they intended to rely on in presenting their case. However, neither doctor testified to any negligence on the part of the respondent. In fact, both indicated in affidavits submitted on behalf of the respondent, that the respondent had performed the operation within the standard of care of the community. Nothing is offered to refute this testimony other than the facts that a bone fragment was dropped and that the operation was not a success. However, these facts do not show that the doctor performed the operation negligently. Therefore in the absence of even an offer to supply expert testimony in their favor, appellants cannot complain about a dismissal of their case as far as count II. *See Hall v. Bacon, id.*

■ In relation to the dismissal of count I, there is no evidence that Dr. Grefenson warranted the success of the operation other than the appellant's testimony. Contained in the record is his signed waiver which says: "no warranty or guarantee has been made as to the result or cure." Without any attempt to show that the signature was obtained improperly, the appellants have no grounds for complaint of the dismissal of this count.

Lastly, the appellants assert that the court erred in dismissing count III wherein it is alleged that the respondent did not properly warn the appellants of the risks involved.

In the case of *Riedinger v. Colburn, supra,* 361 F.Supp. at 1076–77, the court stated that there was no case law in Idaho establishing the principle of informed consent or the standard to be applied in reviewing cases involving such issues. The court under *Erie* stated that it had the duty to predict what substantive course Idaho

would choose if the issue was presented to its highest court.

■ The *Riedinger* court utilized the analysis of the California Supreme Court announced in the case of *Cobbs v. Grant,* 502 P.2d 1 (Cal.1972), which we also adopt. The court stated:

"Therefore, we hold, as an integral part of a physician's overall obligation to the patient, there is a duty of reasonable disclosure of the available choices with respect to proposed therapy and of the dangers inherent and potentially involved in each." 502 P.2d at 10.

The court in Cobbs went on to discuss the amount of disclosure that should be given to a patient and in summary adopted as a rule of disclosure the medical community standard for general procedures, but when relatively complicated surgery is involved, a doctor must, in addition, disclose known risks of death or serious bodily injury.

■ On their behalf, appellants presented LePelley's own assertion of non-disclosure and the affidavit of Dr. Goltry in which he stated that the failure to warn the patient that it is possible to drop a bone fragment during a stapedectomy and that there is some failure rate would be a breach of the standard of care. There is conflicting evidence as to whether the respondent did warn or even present the risks involved. The signed consent to surgery which states that the procedures had been explained to the appellant is not dispositive of the issue contrary to respondent's assertions because it merely states: "The nature of the operation has been explained to me . . . ." There is nothing in this statement that indicates that any risks of surgery were given the appellant nor any discussion of possibility of lack of success. There is not even an indication of what specific details were given appellant as to the procedures involved in the actual surgery. The question of whether the respondent met the standard outlined above in informing the appellant of the risks is a question for the jury.[1]

1. In 1975 the legislature enacted I.C. §§ 39–4304 and 4305 (1975 Sess.Laws Ch. 60 §§ 4 and

5, pp. 124–126) which codifies the standards outlined in *Cobbs, supra,* and essentially shifts

Considering all inferences and presumptions in appellant's favor, we find that there is an unresolved issue of fact concerning the explanation or lack thereof as to the risks involved in the operation and therefore we reverse the summary judgment on this issue.

We therefore affirm the granting of the motion for summary judgment as to counts I and II of the complaint and reverse as to count III and remand for further proceedings consistent with this opinion. Costs to appellant. No attorney fees allowed.

DONALDSON, C. J., and SHEPARD, BAKES and BISTLINE, JJ., concur.

the burden to the plaintiff to show that consent was made without adequate explanation of risks or that the signature was obtained by fraud.