793 P.2d 1230
**Howard Lyle HAKE,
Plaintiff–Respondent,**

v.

**Larry R. DeLANE, M.D.,
Defendant–Appellant.**

**No. 17644.**

Supreme Court of Idaho.

June 6, 1990.

Quane, Smith, Howard & Hull, Boise, for defendant-appellant. Jeremiah A. Quane argued.

Aherin & Rice, P.A., Lewiston, for plaintiff-respondent. Anthony C. Anegon argued.

JOHNSON, Justice.

This is a medical malpractice case in which the jury awarded the patient $300,-000.00. The most significant issue presented is whether there was substantial evidence upon which the jury could have found that any breach of care by the doctor proximately caused the patient's damages. We conclude that there was.

We also hold that the trial court did not abuse its discretion (1) by not granting a new trial on the ground that some jury members were aware of a newspaper article pertaining to the case or on the ground that the trial court permitted a copy of the newspaper from which the article had been excised to be placed in the jury room, (2) by not granting a new trial on the grounds that a juror knew the patient better than she had admitted on voir dire and that she was accused of introducing into the jury deliberations evidence concerning blood pressures that she had taken from nursing books, and (3) in concluding that the finding of liability by the jury was not against the clear weight of the evidence.

We hold that the trial court should not have excluded evidence of the doctor's habit of referring patients to other doctors, but that this exclusion was harmless error.

## I.

## THE BACKGROUND AND PRIOR PROCEEDINGS.

Lyle Hake (the patient) was fourteen years old in December 1980, when his mother first took him to see Larry R. De-Lane, M.D. (the doctor), a family physician. During the preceding four years, the patient had not grown as much as other children his age, had become obese and had experienced headaches and fatigue. A physical examination by the doctor revealed that the patient was in the fifth percentile for height and the fiftieth percentile for weight compared to other boys his age. He had elevated blood pressure and a trace of protein in his urine.

During the following two years, the patient visited the doctor for examination and treatment approximately thirty times. The doctor treated the patient for various symptoms, including severe headaches, high blood pressure, obesity, kidney stones, acne, lack of growth, depression and low self-image. In late November 1982, the patient was seen in the hospital emergency room for a possible kidney stone. Four days later, the patient consulted with the doctor concerning the kidney stone. The doctor immediately referred the patient to a urologist, who reported that the patient's bones were abnormal and that the patient should be given a metabolic evaluation. The evaluation indicated that the patient had Cushing's syndrome, a hormonal disorder caused by an excess of cortisol in the body.

The urologist referred the patient to the Oregon Health Sciences University for further diagnosis and treatment. There he was seen by a pediatric endocrinologist, who diagnosed the patient as having Cushing's disease, which is caused by a tumor of the pituitary gland. The tumor causes the pituitary gland to produce too much ACTH, which in turn causes the adrenal gland to produce too much cortisol. In February 1983, surgery was performed to remove the tumor. After the surgery the patient began to grow and lost weight. The other symptoms of Cushing's disease also resolved.

The patient sued the doctor, alleging that the doctor had negligently failed: (1) to diagnose the patient's condition as Cushing's syndrome, (2) to recommend or prescribe proper treatment for the patient's physical problems, (3) to refer the patient to another physician qualified to diagnose the patient's medical condition, (4) to perform or have others perform tests that would have made it possible to diagnose the patient's medical condition, and (5) to use due care and circumspection in treating the patient.

On the second day of the trial, while jury selection was continuing, a local newspaper published an article concerning the case. This article stated that the patient claimed in the lawsuit that a medical prelitigation screening panel had found that the doctor had negligently failed to meet medical standards of the community by failing to diagnose, treat or refer the patient. Although the trial court had admonished the prospective jurors the day before not to read the newspaper, the trial court allowed a copy of the newspaper to be placed in the jury room with the article concerning the case having been excised.

Three days later, the doctor's attorney learned of the newspaper article for the first time and moved for a mistrial. The trial court questioned all of the jurors about their knowledge of the article. They all denied having read the article. All but three denied having heard anything about

its contents. These three admitted having heard of the article, but stated that they did not know anything about its contents. The trial court then denied the motion for mistrial.

During the trial the patient filed a motion to exclude testimony regarding the doctor's patterns of referring patients to other doctors or regarding the referral of other patients to other doctors. The trial court granted the motion on the ground that the evidence was inadmissible as a character trait.

The jury found that the doctor had negligently caused damage to the patient in the amount of $300,000.00. The doctor moved for judgment n.o.v. and for a new trial. The doctor relied in part on the affidavit of a juror stating that one of the other jurors knew the patient better than she had admitted during voir dire and that the same juror had consulted a nursing text regarding blood pressures and had used the information during deliberations. The patient submitted affidavits by the juror accused of misconduct and another juror denying the substance of the juror's affidavit presented by the doctor. The trial court ruled that the affidavits submitted by the patient were more credible.

The trial court also concluded that there was substantial evidence to support the verdict and that the verdict was not against the weight of the evidence. Following the denial of the doctor's motions, the doctor appealed.

II.

THERE WAS SUBSTANTIAL EVIDENCE THAT THE DOCTOR'S NEGLIGENCE WAS THE PROXIMATE CAUSE OF DAMAGES TO THE PATIENT.

The doctor asserts that the trial court should have granted judgment n.o.v. on the grounds that there was no evidence to establish a causal connection between the doctor's alleged negligence and the patient's damages. We disagree.

■ It is well established in this state that in medical malpractice cases the plaintiff must prove not only that the defendant was negligent, but also that the negligence was the proximate cause of the plaintiff's damages. *Flowerdew v. Warner*, 90 Idaho 164, 171, 409 P.2d 110, 114 (1965); *Hall v. Bacon*, 93 Idaho 1, 3, 453 P.2d 816, 818 (1969); *Conrad v. St. Clair*, 100 Idaho 401, 404, 599 P.2d 292, 295 (1979); *Pearson v. Parsons*, 114 Idaho 334, 339, 757 P.2d 197, 202 (1988). This Court has also said that in these cases negligence must be established by expert medical testimony, "because the causative factors are not ordinarily within the knowledge or experience of laymen composing the jury." *Walker v. Distler*, 78 Idaho 38, 47, 296 P.2d 452, 457 (1956).

■ In deciding whether to grant a motion for judgment n.o.v., "the trial judge must view all of the evidence and all inferences drawn therefrom in favor of the non-moving party, and decide if there was substantial evidence to justify submitting the case to the jury." *Quick v. Crane*, 111 Idaho 759, 764, 727 P.2d 1187, 1192 (1986). This is the same standard we are to apply in determining whether the trial court properly decided the motion. *Id.*

Here, the doctor argues that there is no expert medical evidence in the record from which the jury could have found that any negligence of the doctor was the proximate cause of the patient's damages. In denying the motion for judgment n.o.v., the trial court ruled that from the evidence presented on behalf of the patient, the jury could have drawn reasonable inferences as to the damages the patient suffered because of the doctor's failure to diagnose Cushing's syndrome earlier. Using the standard set out in *Quick v. Crane*, we conclude that there was substantial expert medical evidence in the record to support the submission of the question of proximate cause and damages to the jury.

The record here contains the testimony of a family medical practitioner who stated that by the use of a simple and commonly used test the patient's Cushing's disease should have been diagnosed and treated in July 1981. This was sixteen months before the doctor referred the patient to a urologist.

A specialist who is board certified in both pediatrics and pediatric endocrinology and who specializes in hormonal disorders of children testified that the patient had Cushing's disease for at least several years prior to December 1982. This witness also testified that a person whose height placed them in the same percentile as the patient would ordinarily grow five inches between the ages of fourteen and sixteen, roughly the period that the patient was under the care of the doctor. This witness stated that if the patient's Cushing's disease had been diagnosed and treated earlier, the patient would have grown taller. The evidence here indicates that the patient grew only slightly, if at all, during the time he was under the care of the doctor, but that he began growing again after the surgery in February 1983.

A pediatric endocrinologist at the Oregon Health Sciences University testified that the sooner the diagnosis of Cushing's disease is made the better the growth potential of the individual, unless the individual has already finished his growing.

A clinical psychologist testified that Cushing's disease affected the patient's self-image and self-esteem in a very profound way, caused him to be depressed and caused him to suffer emotionally as a consequence. He stated that the longer the patient had the disease, the more profoundly it would affect his self-image and his self-esteem.

Viewing this evidence and the inferences that may reasonably be drawn from it in a manner most favorable to the patient, we conclude that there was substantial evidence to allow the question of proximate cause to be submitted to the jury. The testimony of the medical witnesses indicated that if the patient had been diagnosed as having Cushing's disease between July 1981 and December 1982, the patient would have grown more than he did during

that period. The testimony of the psychologist indicated that the psychological consequences of the disease would not have had as profound an effect on the patient, if the diagnosis had occurred earlier.

The doctor argues that since there is no expert medical evidence that indicates explicitly the degree of growth deprivation and other consequences that occurred because of the doctor's failure to diagnose the patient's Cushing's disease, there is a failure of proof on the issue of proximate cause. This is a hypertechnical view of the burden of proving proximate cause. In *Miller v. Gooding Highway District*, 55 Idaho 258, 264, 41 P.2d 625, 627 (1935), this Court said: "Negligence, as well as the proximate cause of the injury, are questions of fact for the jury, where the facts, or the inference to be drawn therefrom, are in any degree doubtful or such that fair-minded men might reach different conclusions from the facts." More recently, we have held that "it is only in the rare situation in which reasonable minds could not reach different conclusions that the trial court is justified in removing the issue [of proximate cause] from the consideration of the jury." *Fouche v. Chrysler Motors Corp.*, 107 Idaho 701, 704, 692 P.2d 345, 348 (1984).

■ Here, from the medical evidence presented reasonable minds could have reached different conclusions concerning the causation of the patient's damages. Although the evidence did not explicitly tell the jury how much of the patient's damages were caused by the doctor's negligence, it did provide substantial evidence that the doctor's negligence was a proximate cause of damages to the patient. The evidence indicated that the patient might have grown as much as five inches during the two years he was treated by the doctor and that the consequences of Cushing's disease become more profound the longer the diagnosis is delayed. This, together with the fact that the patient began to grow again and the fact that the other symptoms of the disease resolved after the

surgery to remove the tumor, provided a basis for the jury to assess damages. Damages need be proved only with a reasonable certainty and taken out of the realm of speculation. *Anderson & Nafziger v. G.T. Newcomb, Inc.*, 100 Idaho 175, 182–83, 595 P.2d 709, 716–17 (1979). The evidence here provided the jury with the basis to find proximate cause and award damages.

### III.

### THE NEWSPAPER ARTICLE.

■ The doctor asserts that the trial court abused its discretion by not granting a mistrial because of the newspaper article and because the trial court allowed the newspaper in which the article was published, but from which the article had been excised, to be given to the jury panel during the jury selection process. We disagree.

The article contained this statement: "Three years ago, a medical prelitigation screening panel had a hearing and found DeLane negligently failed to meet medical standards of the community by failing to diagnose, treat or refer Hake, he claims in his lawsuit." The trial court questioned each juror about their knowledge of the article. None of the jurors had read the article or knew of its contents. Therefore, there was no basis for granting a mistrial because of the receipt of prejudicial information by the jury panel.

■ The doctor contends that the placement in the jury room of the newspaper from which the article had been excised constituted a communication with the jury to which he did not consent. Apparently, the doctor complains about the hole in the newspaper. We are unable to discern how this hole in the newspaper that was given to the jury implied anything other than that some information about the case had been published. This was not an improper communication. The jury could already have inferred there would be some publicity

about the case because the trial court advised them not to read the newspaper.

## IV.

### JUROR MISCONDUCT.

■ The doctor asserts that the trial court abused its discretion in not granting a new trial because of the purported knowledge of one of the jurors about the patient that was greater than the juror admitted on voir dire and because of the purported use by the same juror of outside information about blood pressure. We disagree.

The trial court considered the affidavit of a juror that was submitted by the doctor and the affidavits of the juror who was alleged to have acted improperly and of another juror that were submitted by the patient. The trial court found that there were conflicts in these affidavits about the facts asserted by the doctor. The trial court resolved the conflicts in favor of the version of the juror who was alleged to have acted improperly. It was within the trial court's discretion to do so. We find no abuse of that discretion.

## V.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING A NEW TRIAL ON THE GROUND THAT THE VERDICT WAS NOT IN ACCORD WITH THE CLEAR WEIGHT OF THE EVIDENCE.

■ The doctor asserts that the trial court should have granted a new trial pursuant to I.R.C.P. 59(a)(6), on the ground that the verdict was not in accord with the clear weight of the evidence. We disagree.

I.R.C.P. 59(a)(6) provides that a new trial may be granted where the evidence is insufficient to justify the verdict. In *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986), we said:

It is well established that the trial judge may grant a new trial based on I.R.C.P.

Rule 59(a)(6) where, after he has weighed all the evidence, including his own determination of the credibility of the witnesses, he concludes that the verdict is not in accord with his assessment of the clear weight of the evidence.

111 Idaho at 766, 727 P.2d at 1194.

■ The decision whether to grant a new trial pursuant to I.R.C.P. 59(a)(6) is within the discretion of the trial court. *Id.* at 767, 727 P.2d at 1195. We will not overturn a decision granting or denying a new trial under this rule unless the trial court has manifestly abused the wide discretion vested in it. *Id.* at 770, 727 P.2d at 1198.

Here, the trial court referred to the standard for considering new trials under *Quick v. Crane*, reviewed the evidence presented in the trial and concluded that the verdict was not contrary to the weight of the evidence. The trial court did not abuse its discretion in denying the new trial.

## VI.

### THE TRIAL COURT SHOULD NOT HAVE EXCLUDED THE EVIDENCE CONCERNING THE DOCTOR'S HABIT OF REFERRING PATIENTS TO OTHER DOCTORS, BUT THE EXCLUSION WAS HARMLESS ERROR.

■ The doctor asserts that the trial court should not have excluded evidence concerning the doctor's habit of referring patients to other doctors. We agree, but conclude that the exclusion of this evidence was harmless error.

One of the factual disputes in this case was whether the doctor had made referrals of the patient to other doctors during the two years the patient was under the doctor's care. During the trial the patient filed a motion in limine, seeking to exclude testimony regarding the doctor's patterns of referring patients to other doctors or regarding the referral of other patients to other doctors. This motion was based on I.R.E. 404(a), which provides that evidence

of a person's character or a trait of character is not admissible except in certain limited circumstances. The trial court excluded any evidence concerning the doctor's referral patterns and practices other than his referral of the patient to other doctors.

The doctor contends that he should have been allowed to testify about his habit of referring patients as provided in I.R.E. 406. This rule states:

> **Rule 406. Habit; routine practice.—** Evidence of a habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

■ We ordinarily defer to the trial court's decisions on the admissibility of evidence and overrule evidentiary rulings only when there is a manifest abuse of discretion. Here, the evidence excluded clearly was admissible. The doctor's referral patterns and referral of other patients to other doctors were not evidence of the doctor's character; they were evidence of his habit of making referrals. One of the standard treatises on evidence distinguishes between character and habit:

> Character is a generalized description of a person's disposition, or of the disposition in respect to a general trait, such as honesty, temperance or peacefulness. Habit, in the present context, is more specific. It denotes one's regular response to a repeated situation.

McCORMICK ON EVIDENCE 574–75 (E. Cleary 3d ed. 1984) (footnotes omitted).

The evidence excluded was related to the doctor's regular response to a repeated situation, rather than to the doctor's disposition in respect to a general trait. The excluded evidence of the doctor's habit was relevant to the issue of whether the doctor referred the patient to other doctors. It was an abuse of discretion to exclude the evidence as inadmissible character evidence. However, this does not end our inquiry. We must determine whether the exclusion of the evidence was harmless error.

■ An error in the exclusion of evidence is not grounds for granting a new trial unless refusal to do so is inconsistent with substantial justice. We will disregard the error if it does not affect the substantial rights of the parties. I.R.C.P. 61; I.R.E. 103.

The doctor was allowed to testify as to his referrals of the patient to other doctors. The medical charts of the doctor concerning his treatment of the patient that were admitted in evidence indicated that the doctor had suggested consultations with others, including a neurological consultation for the patient in March 1982, if the patient would agree. In light of this evidence that was admitted, we conclude that the exclusion of the evidence of habit was not inconsistent with substantial justice and did not affect the substantial rights of the doctor.

## VII.

## CONCLUSION.

We affirm the judgment and the trial court's denial of the doctor's motions for judgment n.o.v. and for a new trial.

We award costs, but no attorney fees, to respondent.

BAKES, C.J., and BISTLINE, BOYLE and McDEVITT, JJ., concur.